The next argued case is number 191424, Gensetix, Inc. v. Baylor College of Medicine. Gensetix contends that this court should reverse the district court either under Rule 19A because the Board of Regents of UT can be made an involuntary plaintiff under the or, barring that, that under Rule 19B, Inequity and Good Conscience, the case should have been permitted to proceed in the absence of UT. Is it your claim under 19A that sovereign immunity doesn't extend to bringing somebody in as an involuntary plaintiff? Yes, Your Honor. What authority do you have for that? So in, well, the authority starts with the Regents of the University of California v. Lilly, which is a Federal Circuit case, where, and in there, this court held that the question raised by the case was whether it was a suit that has been brought against UC. And they said that, the court said they were aided by the Supreme Court's guidance in United and noted that the 11th Amendment simply provides that no suit shall be commenced or prosecuted against a state. The state cannot... But that's, that rule at Lilly is distinguishable, isn't it? Because in that case, the state was the one who initiated the action. In Lilly, the state was the one who initiated an action in a different jurisdiction. Right. And the issue then was whether, and then, and then UC said that, claimed sovereign immunity from the different venue. Right. But, but, but importantly, in the Regents case, Regents did not find waiver, period, full stop. Regents found, based on the Supreme Court's United States v. Peters decision, that a state cannot be made a defendant to a suit by an individual, but it remains the duty of the courts of the United States to decide all cases brought before them by citizens of one state against citizens of a different state, where a state is not necessarily a defendant. And explicitly at, in Regents at 1564 to 1565, specifically held that it was not finding that UC had waived sovereign immunity. Quote, we need not determine whether UC waived its immunity only in California because this case does not create an 11th Amendment jurisdictional issue concerning which the question of waiver even arises. But in none of those cases, though, were we talking about someone being involunt, a state being involuntarily brought into an action, either as a plaintiff or a defendant, right? Regents does, Regents was, was as we've discussed, the, the, the state acted initially. The Supreme Court case wasn't talking about being involuntarily brought into an action as a plaintiff. The independent wireless was, but it wasn't a sovereign. Right, but that's not a sovereign. Correct. However. Gotcha on independent wireless. We agree with you that a patent holder normally gets brought in, but we're talking about where sovereign immunity comes into play. And in, I, I, it was either Lone Star or I, I think it was actually Regents that held that, that there is no case that, that anyone has cited that says that a state cannot be made an involuntary plaintiff to a lawsuit. And we cited a case from every circuit that said the 11th Amendment only applies to suits commenced, or does not apply to suits commenced or prosecuted by a state. Why, why, why given the obvious principle behind sovereign immunity, does it matter whether a particular party has the label plaintiff or defendant as opposed to the substantive point, did that party come in voluntarily or not? Well in the cases, in, in all of the cases that have said it applies, sovereign immunity applies to a state as a defendant, but not to a state as a plaintiff, start with the text of the 11th Amendment to the Constitution that, that specifically only. Sovereign immunity law we've known for 200 and many years is not limited by the text of the 11th Amendment. Yeah, that's, it starts with the text of the 11th Amendment. And no case has started with the text of the 11th Amendment and concluded sovereign immunity applies to an involuntary plaintiff. The point is not to subject sovereigns unwillingly to the judgment of a court. That's correct. And the- So why does it matter whether you put a P or a D in front of their party status? Well it is, our, our argument is that it is not only the, the status of involuntary plaintiff versus defendant, but like all Rule 19 issues, it's based on the specific facts of the case presented here. And, and what we argue is the, the reason that regents is analogous, and when UT distinguished regents they, in their brief, they said, well, we, that is distinguishable because UC had originally agreed to file a case. But- Originally did file a case. Originally did file a case. But that, those, the cases that say a, a suit brought against a state or by a state, the difference is that UT contracted with Gen Cetics and under, and by contract required Gen Cetics to sue infringers within a given amount of time on pain of breach of contract and losing the exclusive license they had paid for. So the argument that, so while it's different than regents, it is also similar in that here we do not have a state that is being dragged into court by a federal court and it had no to say so. UT entered into the exclusive license agreement, agreed to cooperate, required Gen Cetics to file infringement lawsuits on pain of breach of contract and lose the ELA. In a factual- Those things might be all pertinent to 19B, but under, with respect to the sovereign immunity, didn't the agreement expressly state that there was no waiver of sovereign immunity? It did. The agreement said, the ELA said we are not waiving sovereign immunity. And that is why, and I won't belabor the point, we are not arguing waiver. We didn't argue waiver below, we're not arguing waiver here. We are arguing that there is no case that prevents a sovereign from being named as an involuntary plaintiff, particularly where that state has contracted and on pain of another party's breach required that entity to file a federal lawsuit for patent infringement. And then when it came time to cooperate, as they had also contractually agreed to do, they decided to stay out. They did not take a position below about whether all substantial rights had been conveyed, but they said they did not want to be joined as an involuntary plaintiff. But there's no authority for that. Nothing about making UT an involuntary plaintiff in this case, given the agreement, which is not waiver, but it is an agreement that in the context, the exclusive license agreement means UT will not expend resources from the state treasury if they're named an involuntary plaintiff. UT is not on the hook for money damages or any of the things that, of the principles that sovereign immunity implicates for the state, none of them are prejudiced by adding them as an involuntary plaintiff in this case, based on their agreement with gen sex. I mean, so wouldn't it be bound by a judgment, for example, of invalidity? Yes. And it would be presumably, well, that might be enough, but also bound by any other judgment rendered, including perhaps a judgment against the three defendants that it might very much prefer not to have them saddled with. Such as what? Monetary judgment. You, Dr. Decker, are liable for a million dollars, and UT thinks, I don't want that. I've got a side deal with Dr. Decker for all kinds of other interesting stuff that outweighs my interest in having him liable on this patent. Well, that's not what they contracted to agree. They contracted with Gen Cetics, required Gen Cetics to sue all infringers within six months. And you- But retained the right not to cooperate. I'm sorry, not to voluntarily be in the suit. Well, I guess part of what this appeal is about is whether they voluntarily retained that right or not, or whether, because of the involuntary plaintiff procedure that does not require them to become a defendant, and that they cannot be prejudiced by because they agreed to do it, that those sovereign immunity cases do not control. There is, all of the cases say that if the state is a plaintiff, sovereign immunity, that issue, there might be other reasons that you shouldn't join, but sovereign immunity is not one of them. And I think it's notable that even in the regent's case, where it would have been very easy to find waiver, that this court went out of its way to say, we are not finding waiver. And instead, we are finding that sovereign immunity is not implicated because the state is not a defendant, and this is not a suit against the state. Can you turn your attention to the 19B question? Yes, Your Honor. And in particular, why doesn't Pimentel put so strong a thumb on the scales, or, yes, I'll put it that way, as to require us to say that it was not an abuse of discretion for the judge here to say, I'm not going to proceed without you, even at the risk that the defendant, Jen Seddix, doesn't get to bring this infringement suit anywhere? Well, I think Pimentel is distinguishable on a number of bases. The most important— It's obviously factually distinguishable. Why doesn't its articulation of the extremely great weight to be given to the sovereign interest, again, even if the plaintiff loses the ability to—has no alternative for him? Because the sovereign interest that was articulated in Pimentel as being incredibly strong was not state sovereign immunity first. Foreign sovereign immunity. It was comity in international relations. Foreign sovereign immunity. Foreign sovereign immunity. And the court talked almost interchangeably between federal government sovereign immunity, foreign sovereign immunity, and it talked about sovereign immunity more generally. I'm not sure that isn't, for that purpose, a unitary principle. Well, there's no question they talked about both, but in the end, the holding was, even though the—and those parties that were trying to—where there were parties trying to interplead, it wasn't fully an involuntary plaintiff situation. But to your point, the important point is, it was—the court held 19B didn't—or affirmed the 19B issue because the plaintiff did have an alternative forum. The alternative forum was in the Philippines, and because of the international comity interests and the foreign sovereign immunity interests at play in Pimentel that are not at play in this case, the court basically said, who are we to say that the claimant shouldn't go to the Philippines and seek to recover the money from this fund that was created for these folks? The claimant is not without a remedy. It's in the Philippines, and in fact, the place where the alternative pursuit of this remedy is, is the better one in line with our deference to the foreign actors who have set up their own procedure for determining how to distribute these funds. And I'm happy to continue this on Pimentel, Your Honor, but I'm about out of time. All right. Let's hear from the other side. Thank you. Mr. Hawes. Thank you, Your Honor. We're splitting things up a little bit. We have defendant appellees and a plaintiff appellee, and I'll be spending 10 minutes for the defendant appellees, and then my colleague will spend five minutes for the plaintiff. Okay. The involuntary plaintiff appellee. I don't think there's a proper way to put that on the brief, so we left it, but you're 100% right, Your Honor. And actually, I'd like to start with one of your questions, which is where you challenged the idea that the sovereign immunity of a state is subject to the label, right? If it's not defendants and plaintiffs, what is it? And I would say that the most persuasive case, for Your Honor, is the Morrow case that we cited in our brief. And that's the Fifth Circuit case that specifically says that the court, the key issue for sovereign immunity and for the 11th Amendment, is that the court does not have the power to adjudicate the state's interest in property without the state's consent. But you're telling us that if the state enters into a contract, that contract can never be enforced? Not at all, Your Honor. This specific contract includes a provision that says, notwithstanding anything else in the contract, you do not waive our sovereign immunity. That doesn't mean that states can't- So they're all saying you can never sue us on this contract because we're not going to waive sovereign immunity, even though we have entered into these elaborate commercial relationships. For this particular contract, it is our position that sovereign immunity protects the University of Texas. But a licensee doesn't have to agree to that provision. Why would anybody ever make a deal? Why would anyone ever make a deal with the state or, in this case, with a university? You're just, I don't know, you're not even rolling the dice. You're just saying, whatever it is, I lose. Two scenarios, Your Honor. First of all, you license for all substantial rights. They do not challenge on appeal that they did not license for all substantial rights. If they had done so, they could bring this case by themselves and there would be no issue of sovereign immunity. That would never even come up. Well, clearly, when you say they didn't have to agree to that provision, but not waiving sovereign immunity is generally that the state would have that provision because they don't want someone else to sue them. Not to refuse to be the patent holder if it's necessary under independent wireless. I mean, clearly, they don't want to be sued by the alleged infringer in a deck action and they could assert their sovereign immunity there. But the notion that they would not only agree to let synthetics sue, but say they must sue. Affirmative contractual obligation to sue and then say, but we can make it impossible for you to sue. Your Honor, first of all, I'd say there are a number of reasons why a university would want to preserve its sovereign immunity and that Morrow lays that out, that they don't want to have their property interests being adjudicated by a federal court without their agreement. To the extent there are those two provisions in the license agreement, I would point out that, very carefully, what the UT did in the provision, and this is on page of the appendix, page A326, was they said, nothing in this agreement shall overcome our sovereign immunity. So they knew there were other things in the agreement, but they were clear. And ginsenics knew, both when it entered into the agreement and when it amended the agreement, that UT, despite any other provision of the agreement, was retaining its sovereign immunity rights. And to answer your question, Judge Newman, a licensee doesn't have to agree to that. That's something they can decide on. They can sue if money is earned. They could sue. They just can't be sued. And I appreciate that your colleague has chosen not to argue waiver on the theory, and I think that the case of the contract is stronger. But precedent has crossed that bridge in many areas that once you choose, as a university, whether to participate in the patent system, to participate in licensing, income generation, royalties, and all the rest of it, you're on the same playing field as anyone else. And the fact that you happen to be a state university rather than a private university does not override all of these commercial relationships. And although I've presented this to you as a question, it seems to me that precedent has crossed this bridge and answered that question. And the answer is, yes, you have waived the opportunity to not participate in anything involving the courts. Your Honor, there are only really two ways UT could have waived. One would be by how it agreed in a license agreement, and it specifically said, notwithstanding anything else in this agreement, we're not waiving. We're not. They kept the right to income. They kept an interest. They agreed to participate. Now that they're being called on it, he was saying, leave us alone. Your Honor, especially that participation, I'd point you to the provision they quote, which is on page A315 of the record. The one they're relying on says, the parties agree to cooperate fully with each other. It does not say that UT has to do anything Ginsetic says. It also doesn't say that Ginsetic has to do anything UT says. But it is just as much part of that provision that Ginsetic would cooperate with UT not wanting to sue researchers as it might be part of that agreement. Well, you're not going to buy me on that argument. But, OK, a cooperation in the context of an agreement that talks about filing lawsuits and recovery under those lawsuits is a pretty well-known concept. So I'm not convinced that, therefore, they had to cooperate with UT not cooperating. That doesn't make any sense to me. But assuming that you're right, that they can't waive it either because they didn't in the agreement or they haven't waived it by participating in the patent system, though a lot of people think sort of prepaid might not be long for this world. But putting that aside, assuming that's true, it still is relevant to the 19B inquiry, right? So, right, even accepting that Pimentel seems to make that first 19B factor of sovereign immunity pretty important, there's a lot of other important things that didn't show up in Pimentel, like no other avenue of relief. Right. And the district court was very— And this kind of agreement. Right. The district court was very cognizant of that. If you look at the district court's opinion— The district court made some fact findings that don't make much sense, do they? I mean— Your Honor, the district court looked at the situation and said, there are some things, very important things, on each side. Right? It's very important to protect sovereign immunity. It's very important not to have a patent found invalid where someone who retains substantial rights isn't even present. But they also looked at the other side. Judge Hanen also looked at, it's very important for them to have the ability to bring this suit, right? So there were two sides to it. And then the judge— But the judge specifically said that there would be a threat to the defendants of multiple lawsuits. But yet, under the agreement, the UT can't sue with respect to any of the uses that Gensetics has unless and until Gensetics fails to do so. So there is no threat of multiple lawsuits. Respectfully, Your Honor, they assert that the judge said that. But if you look at page 21, at the bottom of page 21, the judge was actually just discussing Baylor College of Medicine's argument. The judge then on page 22 said, but the court declines to determine that. So the judge— Well, the court declined to determine the estoppel argument. Well, the court—I mean, the court didn't determine either way whose argument was correct about whether there was a risk of multiple lawsuits here. It's discussed on the bottom of page 21. Page 22, all the court does is say, here's what Baylor College of Medicine argues. Here's when Gensetics argues. I don't need to determine this. Because I've looked at the other parts of that factor. Because Factor 3 is not just about multiple lawsuits. You look at Rule 19. Factor 3 also includes the fact that you have—whether it's a judgment rendered in the person's absence would be adequate. And the court determined that, no, it wouldn't be adequate because you don't have UT involved in arguing as to what this pattern— I think you're wrong, reading 21 and 22. I mean, the court said that they're not going to decide whether there would be judicial estoppel. But the court specifically found that one of the reasons that factor weighed in favor of finding that they were an indispensable party is because there was a risk of multiple lawsuits. Respectfully, Your Honor, the first sentence says that a judgment rendered without UT would be inadequate under the third factor. The second sentence, right at the bottom of page 21, says what BCM argues. The next sentence on 22 says Gensetics argues— I just read the sentences. I see what you're saying. But he went back and forth between— He presented what the arguments were, and he said, I don't need to resolve this. Well, he specifically said what he wasn't resolving. But beyond that, how do you get around our case, our Max Planck decision? Your Honor, Max Planck certainly doesn't address this situation where you've got a party that agreed that sovereign immunity was going to be respected. That was not the situation in Max Planck, and that was very important to the district court here. The district court here said, look, you agreed twice that sovereign immunity was going to trump everything else in that license agreement. The language in the license agreement specifically says that that's sovereign immunity provision. That's essentially merging the 19A analysis with the 19B analysis. There's a variety of other factors that need to be considered, and in the Max Planck report, went through those factors, one of which is University of Texas interests are completely aligned with Gensetics in this case. But Gensetics now argues that. Gensetics might certainly want a broader claim construction, for example, to try to capture infringement, but makes invalidity more possible. That's exactly what was discussed. Well, Gensetics, if they create a problem with validity, then they're going to be as harmed as the University of Texas. But the University of Texas might not even want to take that much of a risk when the University of Texas is not trying, as Gensetics might be trying to do, to read the claims broadly to capture an infringement. But in Max Planck, we specifically said that didn't make a difference. In Max Planck, we didn't deal with an additional factor, which the district court found here, which was that equitably, and under 19B, you're supposed to focus on the equity, that where someone like Gensetics has agreed that sovereign immunity trumps the rest of the license agreement. Right, but that's what I'm saying. The court then collapses the whole thing into one factor, not four. No, because if there wasn't that particular provision, the court might not have, even if there was sovereign immunity there, the court might not have said, you agreed to this specifically, which the court did here. And given that it takes a clear error in weighing the factors for this court under an abusive discretion standard to reverse, I posit that we haven't seen that here, and it hasn't even really been argued. But I do want to make sure my colleague gets some time, so unless the panel has additional questions. Okay, now we'll hear from Mr. Moos. May it please the court. Your Honor, UT is here urging you to affirm the district court ruling, basically because we think it comports with the scope of sovereign immunity under the Constitution and the case law. Namely, that UT would not be subject to a course of joinder under Rule 19A as an involuntary plaintiff, and the property of UT would be protected in its absence under Rule 19A. Why doesn't UT want to abide by its contractual obligations to Gen Cedex? Well, UT reads this contract differently than Gen Cedex does. UT maintains that the provision you've spoken about, nothing in this contract will waive sovereign immunity, is in fact a placeholder that does allow it to make that decision. But UT's actions in this case are nullifying the license agreement. Well, they're nullifying the bringing of a lawsuit at this time. Remember, sovereign immunity focuses on the decision-making rights of a sovereign state on its own property, and when they entered the union, they retained their sovereignty. I don't have any problems with sovereign immunity generally. What I'm saying is that as a commercial actor, they entered into a license agreement. If they don't say in the license agreement, Gen Cedex may only sue if we give them authority to do so. In fact, it says they must sue. Right. The point is that the state of Texas in sovereign immunity limits bringing actions against or involving the state of Texas. There are state laws that address when you can and cannot sue the state. Then why are they an indispensable party? Why not just proceed without them? Well, because it's University of Texas' property, and they retain the right as a sovereign to control the decision-making over their property. There are various factors in the prejudice to UT of the case going forward that are listed in the record. I mean, we've talked about validity, claim construction. Also, UT was not involved in any kind of pre-evaluation of the claims in terms of assessing the merits. And this case involves seven other causes of action, which we're not even involved in. So, UT has a certain prerogative as a sovereign under the Constitution. They certainly have a prerogative not to participate, but why do they have a prerogative to prevent the action from going forward? They're going forward, under 19b, because as a sovereign, they don't want their property adjudicated without their presence. This is the nature of immunity from suit, whether it's tribal, foreign, U.S. government, or state. There's a consequence, and often in sovereign immunity cases, that's the consequence. If you look at the Ninth Circuit case cited by the defendants, the Ninth Circuit has a number of cases where they basically say the consequence of sovereign immunity is, in fact, that someone will not have a claim in a court. And so that does happen. Now, there's a complicated petition and claims involved here, and we argued what the prejudice was. UT maintains that under the constitutional standard in the cases of the Supreme Court, they are correct, the district court was correct in sum and substance in ruling on 19a and b. One thing I do want to point out about the 11th Amendment, and Judge Taranto, you pointed this out, that is that the 11th Amendment is not literal. And that's one of their primary arguments in their reply brief. And if you look at the FMC case, which is a popular case these days in the courts, it says the 11th Amendment does not define the scope of the state's sovereign immunity. It is but one particular exemplification of that immunity. And that's a very broad statement. But if you look at the case law we cited about involuntary plaintiffs, and there are not a lot of them, but we cited the Eighth Circuit case, Thomas, and there's also Hartley. Those cases basically are protecting the state from being forced to make a decision to initiate a legal action before it's ready at a time and place when they don't want to. And the University of Texas in this particular situation made that determination. And the pleading to reflect, that's what it said. Now, I will note, I think the proper way to have originally brought us in was as an involuntary, as a third-party plaintiff, then realign us as an involuntary plaintiff, if we had been someone who actually ended up being in the case. I think the label of involuntary plaintiff or third-party defendant are interchangeable if you look at the Rule 19, how you bring someone in. The court would have realigned us if he held that we were supposed to be there as an involuntary plaintiff. But I think that's procedurally was the more correct way to do it. If I could address 19A, I do think it's important that independent wireless did not involve a state sovereign. There's talk about applying, they wanted to argue that independent wireless provided the analysis on 19B. But if you look at the independent wireless case, there's no mention of sovereign immunity. And there also, the way the court characterized it, it was almost a problem. If there's a problem for the patent owner, that's too bad. There wasn't an accommodation like there obviously has to be with sovereign immunity. So, those are my general remarks. I'm happy to answer any more questions the panel has. Okay. Thank you, Mr. Mintz. Mr. Schema. Thank you, Your Honor. I'd like to return to Judge Toronto's question and address it in the context of Rule 19B specifically because I really think that's where they did. Which question was that? The Pimentel and how it's different. Ah, why it should be. Yes. And it's actually, I think it is more important to the Rule 60B analysis because that was the analysis, it did the four-factor discussion in Pimentel. And so, the reason why Pimentel. 19B. 19B. 19B. Okay. The reason that Pimentel does not kind of tip the balance or so heavily weigh in favor of not unabusive discretion is because arguably the two most important factors for a Rule 19B analysis come out the other way in Pimentel and in this case. In Pimentel, there was no other party that was aligned with the interests of the absent sovereign, the Philippines. And in fact, they were not coming in as an involuntary plaintiff. They were kept out from interpleading their own claim. But the point is, not only were their claims not represented by any other party in that case, the other party's claims in that case were antagonistic to the nation of Philippines claims that were absent. So, on the one hand, the sovereign in the Philippines was not, their interests were not going to be protected in the suit. And by contrast, there was an alternative forum. The case could proceed in the Philippines. And I think this is important. The Supreme Court basically found that the Philippines noting the comedy interest in allowing a foreign state to use its own courts for dispute if it has a right to do so, and the U.S. courts should defer to that forum concerning the issue of how funds recovered from President Marcos should be distributed. Here, there is no forum like that for Gen Cetics. And the interests of UT are entirely protected and aligned with Gen Cetics' interests. So, under the four-factor test of Rule 19b, frankly, if anything, Pimentel illustrates how strong the case is here compared to how weak it was in Pimentel where the sovereign had no one protecting their interests in the action, and there was an alternative forum for the other party could go to the Philippines to press their claim. There's no place for Gen Cetics to go, and UT's interests are adequately represented. For that reason, that is why I think, coming back to Judge O'Malley's comment, that the University of Utah case does in many ways control this case. Although that was an inventorship issue, the issues were the same. The issue was the inventorship challenge, essentially, that could go forward in the absence of the sovereign did not matter under Rule 19b or was in the weighing of the factors was found not to predominate because the other parties in the case and the other party that was aligned with the University of Utah also had every incentive in inventorship not changing and would adequately protect the absent sovereign's interests. Just like here, there is no finding below. There is no even argument from Baylor or from UT about what interests wouldn't be protected in the litigation with or without UT. No argument because the interests are exactly the same. The claim construction argument about we might want a broader claim construction for infringement, in addition to the reason Judge O'Malley identified that, of course, if we're going to invalidate the patent, we're not going to make any money either, so interests are totally aligned. That point actually is important for why this case is different than this court's A123 decision, which denied a 19b on a sovereign because in that case, the licensee had only a field of use license, and this court and the district court below said the interests between the licensee and the patent owner are not entirely aligned because with a field of use licensee may have different incentives about arguing for claim construction than the patent owner who retains some uses outside the field of use. Here, undisputed fact, Gen Cetics had a field of use license worldwide every use. There were no restrictions on the field of use. So that is another reason, advanced in the papers and below, for why there is no difference between the interest that Gen Cetics will be seeking to protect and UT's interest, 100% aligned and no other form for Gen Cetics. Under this court and the US Supreme Court's law, this is what Rule 19b was designed to address, a situation where in equity and good conscience, it is not fair for Gen Cetics to sit on the case aren't implicated here by proceeding in their absence. Their interests are protected. The defendants can get complete relief, and there's no alternative forum for Gen Cetics. All four of the factors weigh heavily in favor of allowing this to proceed, and that's where the contract comes in under Rule 19b. The equities, whether equity and good conscience, to the extent there's an equitable concern about UT's absence tilting in the balance of not letting it go forward, they should not be heard to argue about prejudice in their absence, given the contract. And while I understand from the panel that that argument may not be sufficient to take this into what side the V you are on for whether sovereign immunity is implicated at all, but for Rule 19b, that argument should be dispossessed. Okay, thank you. Thank you. Thank you all. The case is taken under submission.